THE COUNTY OF OKLAHOMA v. R. Q. BLAKENEY.

CONTRACT—*What Included Under, A Question of Law*. Whether work sued
for comes within the contract relied upon for a recovery, and whether the
value of the work was to be measured by such contract, is a question of law
for the court to determine from all the facts shown. Where a contract was
entered into with a board of county commissioners for printing advertise-
ments and notices in a newspaper and for furnishing blanks and stationery
for the several county officers and the price of such work was specified in the
contract; *Held*: That printing election tickets was not included within the
terms of such contract, and could not be recovered for thereunder; that such
work could only be recovered for where there was no special agreement as to
price upon a *quantum meruit*, by showing that such tickets were furnished at
the instance and request of the authorized agent of the county, and further
showing the reasonable value of such work.

*Appeal from the District Court of Oklahoma County.*

STATEMENT OF FACTS.

The record in this case shows that on April 5, 1894.
the county of Oklahoma entered into a written contract

with the Oklahoma Publishing company, a corporation, to do certain printing for said county. Said contract reading in part, as follows:

"It is hereby understood and agreed by and between Oklahoma county and the Oklahoma Publishing company that all the proceedings of said county commissioners shall be published in the Weekly Oklahoman, and all notices of advertisements desired or required to be published shall be published in said Weekly Oklahoman or the Daily Oklahoman, if so desired, for which said Oklahoman Publishing company shall be paid in cash, provided said county is paying its bills in cash, otherwise in county warrants, at the rate of forty cents (40c) per square, ten lines of nonpareil type, for each insertion, to be measured as provided by § 2901 Statutes of Oklahoma, 1893.

"That said Oklahoma Publishing Co. shall furnish all blanks and stationery for said county, including the clerk for the district court, county clerk, register of deeds, county treasurer, probate judge, county surveyor, county attorney, etc., material and workmanship to be equal to samples submitted with bid, and for which said Oklahoma Publishing Co. shall be paid in cash, provided said county is paying its bills in cash, otherwise in county warrants. For

| | |
|---|---|
| $\frac{1}{2}$ sheets per M, both sides | $ 6.50 |
| $\frac{1}{4}$ "   "   "   "   " | 4.50 |
| $\frac{1}{8}$ "   "   "   "   " | 3.00 |
| Whole sheets per M, both sides | 10.00 |

"All tabular matter double above prices for, $\frac{1}{8}$, $\frac{1}{4}$, $\frac{1}{2}$ of whole sheets; ten inch envelopes, best quality flat paper, per M, $6.00; or on cheap paper, if so ordered, per M, $5.00; six and one-half inch envelopes, best quality as above, per M, $4.00, or on cheap paper, if so ordered, per M, $3.00; letter heads, 12 pound paper, per M, $3.50; or on cheap paper, if so ordered, per M, $3.00. If any of the above named blanks are desired in lots of less than 1,000 they shall be furnished at the following rates:

$\frac{1}{8}$ sheets per 100, both sides............$1.00
$\frac{1}{4}$ sheets per 100, both sides............ 1.50
$\frac{1}{2}$ sheets per 100, both sides............ 1.75
Whole sheets per 100, both sides....... 3.50

"All tabular matter double last above prices for each size named.

"This contract to be in force and effect for the term of one year from and after April 4, 1894."

This contract and the rights of the Oklahoma Publishing Co. therein was, by several mesne assignments, transferred to the appellee, and on the thirteenth day of October, 1894, said appellee claimed to be the owner and holder of said contract:

On November 1, 1894, the appellee herein, at the request of the election commissioners of Oklahoma county, printed and delivered to said commissioners 12,042 ballots for use at the general election in said county on the sixth day of said November. On the seventeenth of said month the appellee presented to the board of county commissioners of said county for allowance his bill for printing said tickets, amounting to the sum of $710.99; that said county commissioners on said day, allowed and appropriated the sum of $150 for said printing; that on or about the thirtieth day of November, 1894, appellee presented the said board of county commissioners an account of $560.99, claimed by him to be the amount due for said printing after deducting $150 allowed and appropriated as aforesaid. Said commissioners rejected said bill and refused to allow the same. From the order of said commissioners, refusing to allow said account, appellee duly appealed to the district court of Oklahoma county, where trial was had and a judgment rendered by said district court in favor of said appellee for the sum of $509.79. The court found that the charge and

account claimed by said appellee against said county was made by and in conformity and in accordance with the schedule prices contained in the contract entered into by and between the Oklahoma Publishing company and the county commissioners of Oklahoma county on the fifth day of April, 1894; that said contract was duly transferred and assigned to the plaintiff; that it was in full force and effect at the time said work and printing was done for the said county of Oklahoma by the plaintiff, R. Q. Blakeney. The court further found that said board of county commissioners erred in refusing to allow said account, and further found that said bill and account should be sent back to the board of county commissioners of Oklahoma county and that they be ordered to forthwith allow and pay the same, and if they failed so to do that they be punished as for contempt; and it was on the tenth day of April, 1895, ordered and adjudged by said court that said account and claim be sent back to the board of county commissioners of said county, and said board was thereby ordered and directed to forthwith allow and pay the same.

To the findings and judgment of the said court as aforesaid, the appellant duly excepted and afterwards filed its motion for a new trial, which motion having been by the court overruled, appellant duly excepted and has appealed said cause to this court for review.

The errors assigned are very numerous, but the only assignments which it is necessary that we should consider are the first, seventh, eleventh and twelfth. The said assignments of error are as follows:

1. The district court erred in rendering judgment for the plaintiff in any sum whatever, for the reason that plaintiff's petition and evidence showed affirmatively

that the claim for printing the matter here sued for had once been presented to the county commissioners for allowance and the sum of $150 allowed thereon and accepted by plaintiff, and then a new bill filed for the balance disallowed; and that balance is the money here sued for. An appeal from the account as originally presented and allowed in part was never taken and there was no right of review by the district court for the reason that the time for appeal had elapsed and no appeal was taken from the refusal to allow the account originally filed.

7.   The court erred in holding, under the evidence, that the work claimed was embraced and provided for in the contract sued upon, and shown in the evidence.

11.   That the decision of the court is not sustained by the evidence.

12.   That the decision and judgment of the court is contrary to law.

*James L. Brown, County Attorney,* for appellant.

*Hardin Ebey,* for appelee.

The opinion of the court was delivered by

TARSNEY, J.: The contention of appellant in his first assignment of error is that "the account claimed by the appellee having been presented to the county commissioners for allowance on the seventeenth day of November, 1894, and $150 having been allowed thereon and the balance disallowed, and the $150 so allowed having been accepted by appellee and no appeal having been taken from the order of the county commissioners at that time made such action of the county commissioners was a bar to any further proceedings for the collection of the amount

disallowed." This contention of appellant cannot be sustained in this case. Where a claimant ·presents his claim to the commissioners for allowance and it is in part allowed by the board and he accepts the amount thus allowed in satisfaction of his claim he will not be permitted to maintain an action for the part disallowed. Of course where one accepts a partial payment of a disputed account in full settlement and satisfaction he cannot thereafter assert the right to recover for the balance. But in the case at bar there is no evidence in the record tending to show that the amount allowed by the county commissioners was accepted or intended to be accepted in full satisfaction of the claim presented; on the contrary the record shows by the proceedings of the board of county commissioners that the amount allowed and accepted was in partial payment and intended to be only in partial payment of the claim presented, and we must hold that such partial payment did not deprive the defendant in error of the right to subsequently present his claim for the balance of said account to said commissioners for allowance, or to appeal from their order subsequently made disallowing said balance.

On the trial of this cause the appellee introduced in evidence the contract set forth in the statement of facts in this case, and then introduced proof to show that the election tickets for the printing of which he claimed the sum of $560.99 as a balance against said county, were ordered by the board of election commissioners; that there was no special agreement between said board and the appellee as to the price that should be paid for such printing. He also offered some evidence to show that it was understood by one of said election commissioners and himself that the price should be determined by the

aforesaid contract; and for the purpose of bringing such printing within said contract, he offered testimony, which was admitted, that such tickets, by the understanding and custom of the printers' craft, was tabulated matter. There was no evidence whatever showing the actual value of the work done, or of the tickets furnished, but appellee's contention was, and is, that said work was done under the contract aforesaid, and that the price to be paid therefor was governed by said contract. The cause was tried upon that theory and the court below sustained this contention. The findings of the court were that the charge and account claimed by said appellee against said county was made by and in conformity and accordance with the schedule prices contained in said contract. In this, we think the court erred. Whether the said work came within the said contract and whether its value was to be measured thereby, was a question of law for the court to determine from all the facts shown. There is nothing in this contract or in the evidence shown in the record to establish that this work was done under such contract. It is not of the class, kind or character of work that such contract provides for. This contract was not a general contract for the doing of all classes and kinds of printing for said county for the year it was to cover. It was a special contract, relating, by its very terms, to special classes of printing. The only work which the contract covers or that was included therein, or for which the price to be paid was thereby fixed and determined, was the printing of "the proceedings of the board of county commissioners and all notices or advertisements desired or required to be published" and which should be published in the newspaper or newspapers of the Oklahoma Publishing company; and the furnishing of blanks and stationery

for the various offices of the county.   It certainly would not be contended that election tickets could come under the specification of "Notices or advertisements," or that they were to be published as such in any newspaper; or that they are included in the terms "blanks and stationery;" the term "stationery" has a well-defined and well-understood meaning.

"Under the name of stationery are embraced all writing materials and implements together with the numerous appliances with the desk, and of mercantile and commercial offices. In addition to the use, the term 'fancy stationery' covers a miscellaneous assembly of leather and other goods, such as pocket books, bags, card cases and many kindred articles, which can not be classified." (Americanized Encyclopedia Britannica, vol. 9, page 5555).

"Stationery; articles sold by a stationer as paper, etc." (Webster).

The proofs, in the record, tending to show that election tickets were tabulated matter, were incompetent, as the price fixed in the contract upon tabulated matter referred to and included only the tabulated matter expressly specified in the contract, namely: blanks and stationery.

The appellee having furnished to the appellant the election tickets at the special instance and request of the appellant's election commissioners, and such tickets having been used by the appellant, the appellee was entitled to payment therefor; but there having been no agreement as to the price that should be paid, a contract for the doing of other work or the furnishing of other articles or material, and providing the prices that should be paid therefor, and which contract did not include election tickets would not aid in determining the prices to be paid for such election tickets nor

furnish any basis for a recovery therefor. The furnishing of such tickets was clearly outside of said contract and in the absence of an agreement fixing the price, the appellee must recover, if at all, upon the *quantum meruit*. It follows, therefore, that the said seventh, eleventh and twelfth assignments of error were well taken.

For the reasons stated, the judgment in this cause must be be reversed and the cause remanded for new trial. It is so ordered.

All the other Justices concurring